THE CONSOLIDATION NATIONAL BANK

v.

JOHN LARKINS.

[Filed March 18th, 1904.]

A final decree of foreclosure will be opened and a petitioner, who is the equitable owner of the mortgaged premises, will be let in to defend, where it appears that the complainant is attempting to foreclose the mortgage against the holder of the legal title only, with the knowledge at the time the bill of complaint was filed that the petitioner was the equitable owner, and with further knowledge that the mortgage itself has been assigned to the complainant in breach of the purpose for which it was created and held by the mortgagee.

On bill to foreclose and petition to open final decree to let in a new party, &c.

The bill of complaint in this cause is filed by the Consolidation National Bank against John Larkins, as sole defendant, for the foreclosure of a mortgage for $12,000 upon a number of lots of land in Gloucester City, New Jersey. The bill of complaint alleges that Larkins, the mortgagor, was indebted to one Watson in the sum of $12,000, and, being so indebted, made to him the bond and mortgage in question on the 27th day of June, 1895. The mortgage was recorded on July 2d, 1895. The bill alleges that, on the 10th of December, 1902, Watson assigned and transferred the mortgage and bond with all moneys due and to grow due thereon to the complainant; that all the principal moneys mentioned in the bond and mortgage, with interest thereon from June 27th, 1895 (the date of the original transaction), remains due and unpaid. The bill prays a decree of foreclosure and sale. It has been amended by making Minnie Larkins, wife of John Larkins, a defendant,

and charging that any interest which she may have in the mortgaged premises is subject to the mortgage.

The defendant, Larkins, answered the bill, denying that the bond and mortgage were given for his debt. He alleges that they were in fact made to one Michael McManus, and that whatever title he had in the mortgaged premises was as trustee for McManus, who was the real owner of the mortgaged premises.

Issue was joined on this answer and the cause came to a hearing. The counsel for Larkins sought to postpone the hearing, and, being overruled, the cause was heard on the part of the complainant alone and a decree of foreclosure was made in favor of the complainant.

Shortly after the decree was made, a petition was filed by Michael McManus (mentioned in the defendant's answer), alleging that, at the time the mortgage was made, he was the equitable owner of the premises described in the complainant's bill; that Larkins, the defendant in the foreclosure suit, held the title to the property solely as trustee for the petitioner, McManus; that the mortgage foreclosed was in fact made to Watson, the mortgagee, by Larkins, by the petitioner's direction, as collateral security to save Watson harmless respecting certain advancements made, or to be made, by him to the petitioner, McManus; that those matters, which were secured by the mortgage in question, are the subject of an unsettled accounting pending between the petitioner, McManus, and said Watson, which, when justly determined, the petitioner alleges, will show that nothing is in fact due to Watson. The petitioner, McManus, charges that before and at the time of beginning the foreclosure suit the complainant, the Consolidation National Bank, knew all the above-recited facts, and with that knowledge filed its bill, making Mr. Larkins, who held the mere naked title to the mortgaged premises, the sole defendant.

The petitioner, McManus, prays that the decree made in the case may be opened and he be let in to defend the suit.

On the filing of his petition an order was allowed that the complainant show cause why the decree should not be opened

and petitioner made a party, with privilege to set up such defence as he may be advised, with leave to take affidavits on notice, in support of the rule.

*Mr. Peter V. Voorhees* and *Mr. Howard M. Cooper,* for the complainant.

*Mr. Schuyler C. Woodhull* and *Mr. David J. Pancoast,* for McManus, petitioner.

GREY, V. C.

On the coming in of the order to show cause in this case the deposition of the petitioner, McManus, and certain documentary proofs were presented. By these it appears that the title to the mortgaged premises stood in the name of the defendant, Larkins, who held it as trustee for McManus and at his absolute disposal. Larkins was in fact a "straw man" for McManus.

The mortgage foreclosed by the complainant, the Consolidation National Bank, came into being in this way: The petitioner, McManus, was engaged in business by which he became the owner of warrants on the city of Philadelphia for large sums of money and was also in need to raise large amounts from time to time. Up to the year 1891 McManus had been a depositor with the complainant company, and it had collected his warrants, and loaned him money on notes. In that year (1891) McManus ceased to do business with the bank save as he renewed certain notes which it had discounted for him. Mr. Watson, the president of the complainant bank, thereafter took. the bank's place and, from 1891 to 1898, collected Mr. McManus' warrants and aided him in raising money for his business. In 1895, while the account between McManus and Watson was still running, the bond and mortgage in question were made by Larkins to Watson, by McManus' direction, as collateral security for any balance which might on settlement of the accounts between McManus and Watson, be found to be due to Watson. The whole arrangement for the making of the mortgage was directed by McManus, who paid all the expenses. Watson had no deal-

ings with Larkins with respect to the mortgaged premises or the making or delivery of the mortgage. Larkins made it because he held the title for McManus, and the latter used it to secure his account. Watson accepted it from McManus for that purpose and no other. Watson recognized McManus as the real mortgagor by requesting him to pay the taxes on the mortgaged premises, which he did. Watson does not appear ever to have had any dealings with Larkins.

McManus and Watson's financial dealings ended in 1898 without any settlement of accounts. In 1899 McManus filed a bill in equity in the court of common pleas, No. 4, for the county of Philadelphia, against Watson for a settlement of the various transactions between them, averring, among other things, that he had delivered the Larkins mortgage to Watson as collateral security and praying that he be required to retransfer it to him (McManus).

While this suit was pending, Watson, on the 10th day of December, 1902, assigned the Larkins mortgage to the complainant, the Consolidation National Bank, of which he was president. This assignment of the mortgage appears to have been absolute on its face. It was made without either the knowledge or authorization of McManus, who was not informed of the fact until after the bill in this case had been filed by the bank to foreclose it.

The complainant company, on March 5th, 1903, brought suit in the court of common pleas, No. 1, of the county of Philadelphia, against McManus on the several renewed promissory notes which it held against him, and appended to its statement of its claim an averment that, as collateral security for McManus' indebtedness, the bank held "a certain mortgage, given by one John Larkins, secured upon premises in Gloucester, New Jersey, in the sum of $12,000," and stated that nothing had by the plaintiff been realized upon said mortgage and that McManus was entitled to no credit thereon.

Mr. McManus testifies that, in fact, he is not indebted in any balance either to Watson or to the complainant bank, and in-

sists that the suits pending, as stated, in the Philadelphia courts will adjudge this to be true.

On March 31st, 1903, the complainant filed its bill of complaint in this cause.

The foregoing facts appear in the deposition and documentary proofs offered by McManus under the order to show cause. The only challenge of the truth of McManus' statements appears in his cross-examination, when the complainant's counsel attempted to show that McManus had, at some previous time, sworn that he did not own some properties in Philadelphia which had been exchanged for the Gloucester City properties, the mortgaged premises now in dispute. From which it is argued McManus is not, in fact, the equitable owner of those mortgaged premises. Mr. McManus explained that this matter had been adjusted so that he was in truth the equitable owner. The whole trend of the case shows that both Mr. Watson and the complainant bank, of which he is president, dealt with McManus as the equitable owner of the mortgaged premises. It does not lie with either of them, having accepted the mortgage security on this basis, to retain it and at the same time to avoid the responsibilities which attend upon that acceptance.

The statements of Mr. McManus are not incredible. They are supported rather than contradicted by the documentary proofs. The bank's own filed statement in its Philadelphia suit shows that it claims to hold the mortgage as collateral to a debt owed by McManus. Its bill of complaint in this cause shows that it received the assignment of this mortgage in December, 1902, several years after all the notes mentioned in its statement had matured. The bank and its officers must know whether Mr. McManus' testimony, taken on notice under the order to show cause, is true. The bank appeared, by counsel, to cross-examine Mr. McManus, but did not call any witnesses to contradict him. Under these circumstances his testimony ought not to be discredited.

On the above exhibition of the facts it appears that Mr. McManus was the equitable owner of the mortgaged premises

when the mortgage was made. That Mr. Watson, the mortgagee, knew that fact and accepted the mortgage and dealt with Mr. McManus in recognition of that relation. That the mortgage was given solely as collateral security for the payment of any balance which might be found to be due from McManus to Watson on their final accounts and was held for that purpose from 1895 to 1902. That Watson then transferred the mortgage to the name of the bank of which he is president, separating it from the accounts which it was given to secure, and dealing with it as if it were an independent security. That McManus neither authorized nor knew of this transaction. That the bank, which received the assignment of the mortgage from its president, Mr. Watson, was then charged with knowledge that he held it as collateral security only, to protect any balance which might be found to be due him, and not as an independent security.

Under these circumstances, and with this knowledge, the complainant bank filed its bill to foreclose the mortgage, making Mr. Larkins, who held the legal title to the mortgaged premises, the sole defendant, and entirely omitting from the bill of complaint any mention of Mr. McManus, who was, to the complainant's knowledge, the real equitable owner. The effect of this course of procedure was to pervert the mortgage from the use for which it was created, namely, from being a security to Watson, to protect him for any balance which might be found to be due him, into an independent security for the payment of $12,000, which the bank may collect and use for other purposes.

It was the duty of the complainant bank, under the knowledge it had of the equitable rights of Mr. McManus, to have made him a defendant in its bill of complaint to foreclose this mortgage.

The defendant, Larkins, the "straw man," is a non-resident. Mr. McManus, also a non-resident, casually heard of these foreclosure proceedings while they were pending. His attitude is not that of a party served with process, against whom a decree has inadvertently been permitted to be entered. There is, as

to him, no. need of proving surprise and merits. The complainant, on the showing made by the uncontradicted proofs in this cause, is attempting to enforce a mortgage by foreclosure against the holder of the legal title, with knowledge at the time the bill was filed that another person, whom it has not made a party defendant, was the equitable owner of the mortgaged premises, and with further knowledge that the mortgage itself has been assigned to the complainant in breach of the purpose for which it was created and held by the mortgagee.

On such an exhibition a court of equity will stay the proceedings at any stage of their progress, short of the actual intervention of a *bona fide* purchaser without notice of the outstanding equities of the petitioner.

An order will be advised in accordance with the views above expressed.